**ALEXANDER v. PHILADELPHIA CEILING & STEVEDORING CO.**

No. 383 of 1949, Admiralty.

United States District Court
E. D. Pennsylvania.
July 25, 1951.

---

Milton M. Borowsky, Philadelphia, Pa., for libellant.

Mark D. Alspach, Philadelphia, Pa., for respondent.

McGRANERY, District Judge.

1. At all times material herein, the S. S. Domfront, a Liberty type vessel flying the French flag, was lying in navigable waters moored to Pier "B", Port Richmond, Philadelphia.

2. At all times material herein, libellant was aboard the said vessel as an employee of the Philadelphia Ship Supply and Lumber Company, in the capacity of a carpenter, assisting in shoring up two large tanks which had been stowed upon the main deck forward of the midship housing.

3. The tanks, cylindrical in shape, were of equal size, measuring seventy-four feet in length, and eight and one-half feet in width and ten feet in height. One was located on the offshore side, the other on the inshore side, between the No. 2 and No. 3 hatches, approximately halfway between the ship's side and the hatch coamings.

4. Libellant and his co-employees boarded the vessel for the first time on the morning of January 24, 1949, and engaged in the shoring operations throughout the morning and afternoon of that day. In the morning, the hatches were covered. At 1:00 p. m., respondent's longshoremen commenced to load cargo from the dock into the No. 3 hold.

5. The cargo had to be carried above and over the inshore tank. A cable runner attached to the No. 3 winches, located immediately forward of the hatch, ran at an angle across the after end of the tank to the pier. When this cable was taut, it was raised approximately six to eight feet above the tank.

6. At or about 4:30 p. m., libellant's foreman called him to the inshore tank and directed him and a co-employee to cover an opening located on top of the tank very close to the after end. The cable ran across the tank a very short distance from this opening, and at the time lay inert across the top of the tank at a distance of about three feet from the opening.

7. The libellant passed several pieces of lumber to his fellow-worker on top of the tank and then climbed up himself. The lumber was placed a distance forward of the cable, and both men walked over to the opening to measure it, and stepped back to shape the necessary pieces of lumber. In so doing they crossed over the inert cable.

8. As the libellant stepped over the inert cable, it was suddenly drawn taut, catching him under the crotch and catapulting him in the air; he landed on the deck between the tank and the hatch, striking his head, right shoulder and right hand against the deck.

9. The operator of the winch was aware of the presence of the workmen on the

tank in the vicinity of the cable, and his operation of the winch in the circumstances was negligent, contributing to the libellant's injuries.

10. The libellant was also negligent in walking over the inert cable, instead of picking it up and going under it. His own negligence contributed toward his injuries in the ratio of fifty percent.

11. The injury to the libellant's head and shoulder cleared up shortly. The blow to the right hand and wrist, however, aggravated an old fracture. But prior to this accident, the libellant had experienced no difficulty or handicap in using it. He had been steadily employed at a shipyard for fifteen years up to May, 1948, when he was laid off because of a reduction in force. Subsequently he had worked for various employers, performing heavy work as a steeplejack and as a carpenter aboard vessels.

12. Following the accident, libellant was unable to undertake any gainful employment. On June 24, 1949, an operation was performed on his wrist. Thereafter, on August 22, 1949, he returned to work at the shipyard, where he was employed up to the time of the trial.

13. The present condition of the wrist is one of some restriction of motion, and pain in the joint upon exertion. He is disabled from performing work which requires a forceful or continuous or extremely skillful use of the right hand. He is fifty-five years of age, right-handed and has worked for many years as a manual laborer in jobs requiring the full use of his right hand. However, libellant has demonstrated his intention to concentrate less on manual work and more on supervisory work.

14. By reason of the accident, libellant suffered a period of total disability between January 24, 1949, and August 2, 1949, as a consequence of which he has lost $2,256 in earnings, and incurred medical expenses to $194. During the seventy-three week period from August 22, 1949 to the date of the trial, libellant suffered an average loss of $10 per week in earnings, a total of $730. In addition to the elements of past and future pain and suffering, he has suffered and will suffer a diminution of earning capacity amounting to twenty percent. Upon consideration of all these elements of damage, taking into account of fifty percent reduction of the award because of the libellant's contributory negligence, a fair award would be in the amount of $6,500.

### Conclusions of Law.

1. This Court has jurisdiction over the parties and subject matter.

 2. The injuries which libellant suffered were proximately caused equally by the negligence of the libellant himself and by the negligence of the respondent, through its agents and servants, in operating the winch controlling the inshore cable at a time when the winch operator was aware of libellant's dangerous proximity to the cable.

3. An award may be entered in favor of the libellant and against the respondent in the sum of $6,500, together with interest and costs.